IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )
        v.                  )    CRIMINAL ACTION NO.
                            )       2:12cr104-MHT
STEVEN P. MOCK              )          (WO)
```

OPINION AND ORDER

A jury found defendant Steven P. Mock guilty of one count of conspiracy to commit wire fraud and financial-institution fraud, 18 U.S.C. § 1349, six counts of wire fraud, 18 U.S.C. § 1343, and three counts of financial-institution fraud, 18 U.S.C. § 1344.  The question of Mock's competency was raised at sentencing. The case is now before the court on two motions: (i) the government's motion for its competency evaluation to be performed by the Federal Bureau of Prisons ("BOP") on a custodial basis and (ii) Mock's motion for that evaluation to be performed on an outpatient basis.  For the reasons that follow, the government's motion will be denied, albeit with leave to renew, and Mock's motion granted.

I.

Mock was indicted, along with co-defendants Paul Hulse, Sr., and Frank J. Teers, in June 2012.  In the indictment and at trial, the government alleged that Mock, Hulse, and Teers conspired to, and actually did, defraud financial institutions out of millions of dollars.  Specifically, Hulse represented himself to be a wealthy businessman seeking loans and offering ample collateral in the form of bonds, when in reality he owned no bonds.  Teers, a stockbroker, provided documentation and managed the buying and selling of bonds to facilitate the scheme.  Mock is an attorney.  As alleged by the government, Mock contributed to the conspiracy by vouching for Hulse and confirming his supposed assets.

Hulse pleaded guilty to a related charge.  Mock and Teers went to trial in May and June 2013.  The case was heavily litigated, and Mock in particular filed numerous pretrial motions.  Mock did not testify before the jury.  However, he did testify in a November 2012 pretrial

2

hearing before the magistrate judge.  At no time before or during trial did anyone raise the issue of Mock's competency.  The jury returned a guilty verdict against Mock and Teers on all counts.

The case then proceeded to sentencing.  At the sentencing hearing held from November 25 to 27, 2013, Mock presented mitigation evidence in the form of testimony from Kristine L. Lokken, Ph.D.  Dr. Lokken, a neuropsychologist, testified that she had evaluated Mock on April 25 and 26, 2013, and had later diagnosed him with major neurocognitive disorder.  She found that he suffered from vascular dementia, probably as a result of a stroke or strokes.  Among other deficits, she noted significant impairment in 'executive functions,' including mental flexibility, planning, problem solving, and organization.  She testified that a person with such deficits would have difficulty processing and understanding complex information.

Near the end of Dr. Lokken's testimony, the court, sua sponte, raised with her the question of Mock's competency. She responded that competency had not been the focus of her evaluation and, therefore, that she could not render a definitive opinion on that issue. However, she did state that, based on her evaluation, she had concerns about Mock's competency at the time of trial and at the time of sentencing.

The court adjourned Mock's sentencing pending resolution of the issue of competency. Defense counsel arranged for Mock to be evaluated again, this time by Adriana L. Flores, Ph.D., a forensic and clinical psychologist. Dr. Flores evaluated Mock during a seven-hour session on January 6, 2014, and concurred in Dr. Lokken's diagnosis of major neurocognitive disorder. She found that, because of Mock's significantly impaired executive functioning, he lacked the ability to assist his attorneys and therefore was not competent at the time of his trial or thereafter.

The parties agreed that the government would have the opportunity to conduct its own evaluation of Mock. Mock filed a motion asking that the government's evaluation be conducted out of custody and under outpatient conditions. The government filed its own motion, seeking a custodial evaluation at a BOP medical facility. The court held oral arguments on the question of whether Mock's evaluation would be custodial or not, and that issue is now ready for resolution.

## II.

18 U.S.C. § 4241 provides for competency evaluations at any time prior to sentencing. For the purposes of such an evaluation, "the court <u>may</u> commit the person to be examined for a reasonable period, but not to exceed thirty days." 18 U.S.C. § 4247(b) (emphasis added). The parties agree that by statute the court has the authority to commit Mock for an in-custody evaluation but is not

5

required to do so.  In other words, it is a matter of discretion.

However, Mock argues that the court's discretion is not unfettered and that in fact the prospect of unnecessary imprisonment triggers heightened substantive due-process scrutiny.  He cites four cases: <u>United States v. Neal</u>, 679 F.3d 737, 741 (8th Cir. 2012); <u>United States v. Deters</u>, 143 F.3d 577, 582-84 (10th Cir. 1998); <u>In re Newchurch</u>, 807 F.2d 404, 409 (5th Cir. 1986); <u>United States v. Song</u>, 530 Fed. Appx. 255 (4th Cir. 2013).

In <u>Newchurch</u>, the Fifth Circuit Court of Appeals held that the district court did not have unfettered discretion to order a custodial evaluation for a defendant who pleaded not guilty by reason of insanity; rather, it held, the government must offer not only a reason for a custodial evaluation but also evidence.  The appellate court reasoned:  "In making its determination, the district court should consider the purpose of the examination, the availability and competency of experts in the vicinity of the court, and the fact that the

question of competency to stand trial is for the court, while the issue of insanity at the time of the offense is for the trier of fact, to be determined on the same basis as its evaluation of all other evidence." 807 F.2d at 411.  More to the point, the appellate court said: "The district court should not undertake to evaluate the quality of outpatient examination as opposed to an examination conducted in the custody of the Attorney General solely on its personal past experience, for that experience is neither a matter of record, a subject for cross examination, nor a question susceptible to review on appeal.  The expense of local examination compared to the cost of commitment to a government institution is not a controlling consideration. Having conducted such an evidentiary hearing, the district court should make findings of fact concerning the need for commitment to the custody of the Attorney General."  Id. at 411-12. The appellate court vacated the district court's

7

commitment order and remanded the case for an evidentiary hearing.

The same question regarding an insanity defense was raised in Deters.  143 F.3d at 582-84.  The Tenth Circuit Court of Appeals agreed with the Newchurch court's analysis, but decided that the government's interests in Deters in ensuring the defendant's appearance at trial and in a speedy trial were weighty enough to justify custody in light of concerns in that case about the defendant's risk of flight and delay.

In the unpublished Song, the Fourth Circuit Court of Appeals confronted this question, again in the context of the insanity defense.  530 Fed. Appx. 255.  It followed the other cases, likewise finding that an evidentiary hearing was required.

While Newchurch, Deters, and Song all addressed the court's discretion to commit a defendant who had asserted the insanity defense, in Neal the Eighth Circuit Court of Appeals addressed that same question with regard to a

8

competency evaluation before trial.  679 F.3d at 740.

The appellate court agreed with Newchurch and Deters that

the discretion was not unfettered, but was subject to

due-process constraints.  The appellate court found that,

as in Newchurch, "the government [had] offered no

evidence to establish the presence of compelling

governmental interests which would require Neal's

competency evaluation to be conducted pursuant to a

custodial commitment at a BOP facility, rather than on an

outpatient basis."  679 F.3d at 741.  The court noted

that, as in Newchurch, there had been no evidentiary

hearing and no factual findings on the subject.

One difference between these cases and the instant

one is that Mock has been tried and convicted, while in

these other cases the issue was raised pretrial.

However, if Mock was incompetent at the time of his

trial, then that trial violated due process.  See Watts

v. Singletary, 87 F.3d 1282, 1286 (11th Cir. 1996).  The

fact of his conviction would seem, then, not to answer the concern about his liberty interests.

The court will follow the persuasive and consistent reasoning of these cases.  The government therefore must offer "evidence to establish the presence of compelling governmental interests which would require [Mock's] competency evaluation to be conducted pursuant to a custodial commitment at a BOP facility, rather than on an outpatient basis."  Neal, 679 F.3d at 741.

The government has indicated a strong preference for a custodial evaluation, arguing principally that a custodial evaluation will offer the opportunity to observe Mock over an extended period of time.  The court is inclined to agree that, in light of the unusual nature of Mock's purported incompetence (including the fact that the three attorneys representing him did not, at the time of trial and even during sentencing until the court raised its concerns, view anything about him as raising concerns about his competency), continuous observation

might better help the court understand his level of functioning and his deficits. However, neither the government's arguments nor the court's inclinations are <u>evidence</u>. In light of the liberty interests at stake, the court cannot order Mock subjected to a custodial evaluation without evidence of a compelling governmental interest. <u>Neal</u>, 679 F.3d at 741. In this case, the government has offered none.

The court recognizes that § 4241 mandates that a defendant who has been found incompetent must then be committed to the custody of the Attorney General for a determination of whether he can be made competent. 18 U.S.C. § 4241(d). In some cases, it could be argued that the fact of this future mandatory commitment might lessen the weight of the liberty interests at stake. After all, the question might collapse into the issue of not whether to commit the defendant, but when: should the defendant be found incompetent, then the court would commit him for a custodial determination of whether he can be made

11

competent; and should he be found competent, then the court would sentence him based on his conviction. However, here the court is confronted with a third, reasonable option because of these circumstances: Mock's advanced age (70), the possibly degenerative and incurable nature of his condition, and the non-violent nature of the alleged offenses. Given these circumstances, the court cannot say with reasonable certainty that, if the court were to find that Mock is incompetent (and was so at the time of trial), the government would want to spend its resources pursuing efforts to see if he can be made competent and, if so, then pursuing his retrial. Thus, because there is a reasonable possibility that a finding that Mock is incompetent could mean the end of the case, the court cannot order Mock committed without evidence.

Therefore, the government's evaluation is to be performed on a non-custodial, outpatient basis. However, because, as stated, the court is concerned that a

continuous, in-custody, observation might better help the court in light of the unusual nature of Mock's purported incompetence, the court will direct the government's outpatient evaluator to address, in addition to Mock's competency now and at trial, to what extent subsequent custodial observation might be beneficial to the determination of Mock's competence, and why.

                              ***


    Accordingly, it is ORDERED as follows:

    (1) Defendant Steven P. Mock's motion for an outpatient governmental evaluation (doc. no. 430) is granted.

    (2) The government's motion for a custodial evaluation (doc. no. 444) is denied with leave to renew.

    (3) The government's competency evaluation of defendant Mock shall be performed on an outpatient, non-custodial basis.

13

(4) The government's evaluator shall address defendant Mock's competency: (a) to stand trial in May and June 2013; and (b) to be sentenced currently.

(5) The government's evaluator shall also address to what extent subsequent custodial observation might be beneficial to the determination of defendant Mock's competence, and why.

(6) The government's evaluation shall be filed within 35 days from the date of this order.

DONE, this the 15th day of April, 2014.

        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE