IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA    )
    )
    v.    )    CRIMINAL ACTION NO.
    )    2:12cr104-MHT
STEVEN P. MOCK    )    (WO)

OPINION AND ORDER

A jury found defendant Steven P. Mock guilty of one count of conspiracy to commit wire fraud and financial-institution fraud, 18 U.S.C. § 1349, six counts of wire fraud, 18 U.S.C. § 1343, and three counts of financial-institution fraud, 18 U.S.C. § 1344. The question of Mock's competency was raised at sentencing, and the court ordered that the government's evaluation of Mock be conducted on an outpatient, non-custodial basis. United States v. Mock, 2014 WL 1491198 (M.D. Ala. Apr. 15, 2014) (Thompson, J.). The case is now before the court on Mock's motion to determine whether the government's proposed evaluator should be disqualified because of a conflict of interest. The government will be permitted to proceed with its proposed evaluator.

## I. BACKGROUND

In its indictment and at trial, the government alleged that Mock, along with co-defendants Paul Hulse, Sr., and Frank J. Teers, conspired to, and actually did, defraud financial institutions out of millions of dollars. Specifically, Hulse represented himself to be a wealthy businessman seeking loans and offering ample collateral in the form of bonds, when in reality he owned no bonds. Teers, a stockbroker, provided documentation and managed the buying and selling of bonds to facilitate the scheme. Mock is an attorney. As alleged by the government, Mock contributed to the conspiracy by vouching for Hulse and confirming his supposed assets. Hulse pleaded guilty to a related charge, while Mock and Teers were convicted at trial. Hulse and Teers have been sentenced; Teers, but not Hulse, has appealed.

The procedural background with regard to Mock's competency is set forth in more detail in the court's previous opinion. Mock, 2014 WL 1491198 at *1-2. The

2

issue of Mock's competency was raised by the court at sentencing, which was continued generally pending a competency hearing.  Mock's counsel arranged a private evaluation, the conclusion of which was that Mock is not competent and was not competent at the time of trial. The parties agreed that the government would conduct its own evaluation.  The government sought an inpatient evaluation in Bureau of Prisons ("BOP") custody, and Mock sought to have the evaluation conducted out of custody, on an outpatient basis.  The court concluded that due process required the government to establish a compelling government interest in order to justify a custodial evaluation and that the government had failed to do so in this case.  The court therefore ordered that the government's evaluation be conducted on an outpatient basis.[1]  Id.

---

1. The court required that the government's evaluator address, not only Mock's competency, but also to what extent subsequent custodial observation might still be beneficial to determine Mock's competency.  The court, therefore, gave the government leave to refile its
(continued...)

Apparently, the government had some difficulty finding an expert to conduct that evaluation in Texas, where Mock lives. Eventually, the government reached an agreement with Dr. Steven Rosenblatt, a forensic psychiatrist. However, during the course of the government's discussions with Rosenblatt, it became clear that Rosenblatt had been involved in this case previously: he was retained to, and actually did, conduct a competency evaluation of Mock's co-defendant, Hulse. Rosenblatt informed the government that he had received no information about Mock during the course of his evaluation of Hulse, and Hulse's counsel confirmed that he did not provide Rosenblatt with any information about Mock. The government informed Mock's counsel of the prior involvement, and Mock filed the instant motion to determine whether Rosenblatt has a conflict of interest.

---

1. (...continued)
request for an in-custody competency evaluation. <u>Mock</u>, 2014 WL 1491198 at *4.

4

## II. DISCUSSION

### A.

Mock asks the court to disqualify Dr. Rosenblatt from conducting a competency evaluation in this case.  Before turning to whether that step is warranted, and indeed whether the court even has the authority to do so, the court will first strive to distill Mock's argument and the support he cites for it.  In so doing, the court notes that this argument is quite difficult to follow, and so the court will try to be as concrete as possible in discussing Mock's position.

Mock's core argument is that Rosenblatt's prior involvement in Hulse's case, combined with his proposed involvement in Mock's case, creates a conflict of interest.  Generally speaking, a conflict of interest is defined as "A real or seeming incompatibility between one's private interests and one's public or fiduciary duties" or "A real or seeming incompatibility between" two different duties, such as a conflict between "the

5

interests of two of a lawyer's clients."  Black's Law
Dictionary (9th ed. 2009), Conflict of Interest.

At the outset, it is helpful to distinguish three
kinds of problems that are sometimes described as falling
under this rubric: (1) actual conflict of interest,
meaning a situation that actually compromises an
individual's ability to fulfill his public or fiduciary
duties; (2) potential conflict of interest, meaning a
situation that presents a substantial risk, depending on
intervening events, of compromising an individual's
ability to fulfill his public or fiduciary duties; and
(3) appearance of conflict of interest, meaning an
individual's ability to fulfill his public or fiduciary
duties is not compromised but may be perceived as
compromised by third parties.  <u>See, e.g.</u>, Kevin
McMunigal, <u>Rethinking Attorney Conflict of Interest
Doctrine</u>, 5 Geo. J. Legal Ethics 823, 846 (1992)
(discussing, and criticizing as theoretically

6

inconsistent, distinctions drawn among actual, potential, and appearance of conflicts).

Mock argues that Dr. Rosenblatt's situation is an example of ethically problematic "multiple relationships." The best way to grasp what he means by multiple relationships is to consider the most common example of multiple relationships in the context of forensic psychiatry: the so-called 'dual agency' problem. See Steven H. Berger, MD, Ethics and Dual Agency in Forensic Psychiatry, Psychiatric Times, June 1, 1998 (Doc. No. 475). This problem generally arises when a single psychiatrist serves in the same case as both the clinical treating physician and the forensic evaluator. This can create a conflict of interest: as the treating physician, the doctor's primary duty is to do what is best for the patient; but, as a forensic evaluator, the doctor's primary duty is to give the court an honest assessment of the subject. Sometimes an honest

7

assessment is not in the patient's best interests, hence the conflict.

Mock does not argue that Rosenblatt's involvement in this case presents the dual-agency problem of acting in both treating and forensic capacities.  After all, Rosenblatt has not served as a treating physician to anyone involved in this case.  Rather, he has served in only forensic roles: first performing a forensic evaluation of Hulse, and now proposing to perform such an evaluation of Mock.

Nevertheless, Mock argues that Rosenblatt's involvement raises the related issue of multiple relationships, meaning in general two or more roles or relationships that are in tension with each other.  To flesh out the nature of Mock's concerns, the court looks to the various ethical guidelines for psychiatrists and psychologists on which the parties have relied in this case.  The forensic psychiatry guidelines indicate that involvement in the adversarial process carries with it

8

the potential to infect an evaluator's opinions with bias.  American Academy of Psychiatry and the Law, <u>Ethics Guidelines for the Practice of Forensic Psychiatry</u> (2005) (Doc. No. 471-1) at 3 ("Being retained by one side in a civil or criminal matter exposes psychiatrists to the potential for unintended bias and the danger of distortion of their opinion.").  "It is the responsibility of psychiatrists to minimize such hazards by acting in an honest manner and striving to reach an objective opinion."  <u>Id</u>.  Of particular concern when it comes to such bias is the conflict, discussed above, "inherent in ... differing clinical and forensic roles." <u>Id</u>.  The more general <u>Principles of Medical Ethics</u> further recognizes that the psychiatrist's outside relationships, separate and apart from his dual clinical and forensic roles, have the potential to conflict with his duties and taint his evaluation.  American Psychiatric Association, <u>Principles of Medical Ethics,</u>

9

<u>With Annotations Especially Applicable to Psychiatry</u> (Doc. No. 471-2) (2013) at 13.[2]

Finally, Mock relies on guidelines for psychologists. He acknowledges that Rosenblatt, as a psychiatrist, is not bound to follow those guidelines.  But, he argues, they are relevant and shed light on the similar ethical issues presented in the two closely related fields.  The psychology guidelines warn against conflicts which may impair the practitioner's ability to perform his work, and offer guidance with regard to resolving such conflicts:

---

2. Mock seeks to draw further lessons from the <u>Principles</u>, but in the court's view they have little bearing on this case.  Section 8 of the <u>Principles</u>, on which Mock relies, is merely an annotation of the following general principle: "A physician shall, <u>while caring for a patient</u>, regard responsibility to the patient as paramount."  <u>Id</u>. at 6, 13 (emphasis added). As a forensic psychiatrist, Rosenblatt is not proposing to care for Mock.  Thus, while the court believes Mock is correct that section 8 usefully indicates a risk of other relationships impacting a psychiatrist's performance of his duties, the balance of section 8 (regarding how to handle and resolve such conflicts) appears to be inapposite as applied to Rosenblatt.

10

"Forensic practitioners refrain from taking on a professional role when personal, scientific, professional, legal, financial, or other interests or relationships could reasonably be expected to impair their impartiality, competence, or effectiveness, or expose others with whom a professional relationship exists to harm.

"Forensic practitioners are encouraged to identify, make known, and address real or apparent conflicts of interest in an attempt to maintain the public confidence and trust, discharge professional obligations, and maintain responsibility, impartiality, and accountability. ... Forensic practitioners consider whether a prudent and competent forensic practitioner engaged in similar circumstances would determine that the ability to make a proper decision is likely to become impaired under the immediate circumstances.

"When a conflict of interest is determined to be manageable, continuing services are provided and documented in a way to manage the conflict, maintain accountability, and preserve the trust of relevant others...."

American Psychological Association, Specialty Guidelines for Forensic Psychology ("Forensic Psychology Guidelines") (2013) (Doc. No. 473-1) at 4-5 (citations

11

omitted).   The guidelines also specifically address
multiple relationships, again urging caution and offering
guidance in resolving problematic situations:

> "A multiple relationship occurs when a
> forensic practitioner is ... involved in
> a   personal,   fiscal,   or   other
> relationship with an adverse party; [or]
> at the same time is in a relationship
> with a person closely associated with or
> related to the person with whom the
> forensic   practitioner   has   the
> professional relationship; ....

> "Forensic   practitioners   strive   to
> recognize the potential conflicts of
> interest  and  threats  to  objectivity
> inherent  in  multiple  relationships.
> Forensic practitioners are encouraged to
> recognize   that   some   personal   and
> professional relationships may interfere
> with their ability to practice in a
> competent and impartial manner and they
> seek to minimize any detrimental effects
> by avoiding involvement in such matters
> whenever  feasible  or  limiting  their
> assistance   in   a   manner   that   is
> consistent   with   professional
> obligations."

Id. at 7.

Mock  argues  that  Dr.  Rosenblatt  is  involved  in
multiple relationships: he had a financial and forensic

relationship with Hulse, has a financial relationship with the government, and proposes to have a forensic relationship with Mock. Considering these sources together, Mock suggests that Rosenblatt's multiple relationships could impair Rosenblatt's ability to fulfill his duty of honesty and objectivity.

Mock has articulated only one concrete scenario of potential conflict. Mock argues that he may seek to blame Hulse at sentencing as the leader of the conspiracy who manipulated Mock into participating. If Rosenblatt has some subconscious loyalty to Hulse, due to his prior forensic or financial relationship with Hulse, and if Rosenblatt is called to testify at sentencing, he may be faced with a conflict between his loyalty to Hulse and his duty to be honest with the court. The court hastens to note that the government has retained Rosenblatt to perform only a competency evaluation; so far, there is no indication that Rosenblatt will be called to testify at sentencing, although of course it is possible.

13

Although Mock has not explicitly made the argument, the court notes that an argument that subconscious loyalty to Hulse could also infect Rosenblatt's competency evaluation of Mock, apart from the prospect of Rosenblatt's potential testimony at sentencing, lacks merit.  As to Mock's competency, there is no 'finger pointing' between Mock and Hulse: it is simply a question of Mock's mental capacity.  Thus the court does not believe that, even if Rosenblatt did have some loyalty to Hulse, that loyalty would present any conflict of interest as to the competency evaluation.

Mock indicates there are other ways in which Rosenblatt's involvement is problematic, but the court cannot make sense of how those other issues could create a conflict that would bear on Mock's case.  For example, Mock notes that Rosenblatt had relationships with both Hulse and the government, who were adverse parties (at least until Hulse's case was concluded); this, he argues, constitutes an improper multiple relationship under the

14

psychology   guidelines.     <u>See</u>   <u>Forensic   Psychology</u>
<u>Guidelines</u>   (Doc.   No.   473-1)   at   7   ("fiscal   ...
relationship  with  an  adverse  party").   But  he  does  not
explain  how  that  tension,  if  it  exists,  could  have  any
effect   on   Mock.     After   all,   even   the   psychology
guidelines,  which  may  not  apply  at  all  to  Rosenblatt,
warn   only   that   "<u>some</u>   personal   and   professional
relationships  <u>may</u>  interfere  with  [the  psychiatrist's]
ability  to  practice  in  a  competent  and  impartial  manner."
<u>Id</u>.  (emphasis  added).   Mock  must  do  more  than  point  to
multiple  relationships;  he  must  at  the  least  explain  how
those  relationships  <u>might</u>  affect  him.

     Counsel  for  Mock  also  suggested,  during  a  telephone
conference  held  on  the  record  on  May  15,  2014,  that
Rosenblatt's  evaluation  of  Mock  could  be  compromised
because  he  evaluated  Hulse  first  and  so  may  have  formed
preconceptions  that  could  color  his  analysis  of  Mock.
Under   the   circumstances   of   this   case,   this   seems
extraordinarily  unlikely:  it  is  exceedingly  difficult  to

15

see how information Rosenblatt obtained during Hulse's evaluation, limited to the question of competency, could possibly color his competency evaluation of Mock.  But even if the prior evaluation did color Rosenblatt's opinion of Mock, the court cannot see how that qualifies as a conflict of <u>interests</u>.  Rosenblatt's interest in both cases is accuracy; while it is possible he, like any human, could fall short on that account, that would at most constitute a <u>mistake</u>, not a <u>conflict</u>.

The same is true of the observation made by Kathy Kinlaw, M.Div., a professor of medical ethics who prepared a declaration submitted in support of Mock's motion, that Mock may be less cooperative with Rosenblatt as a result of the prior relationship.  Declaration of Kathy Kinlaw, M.Div. (Doc. No. 478-1) at 5.  A defendant might not trust an evaluator for any number of reasons. While such a lack of trust may impact Rosenblatt's ability to do his job as a practical matter, it does not indicate that he has any conflict of interest.

16

Finally, in addition to his arguments about bias and the appearance of bias, Mock initially argued that Rosenblatt's dual role also raises concerns about confidentiality.  He makes no argument in support of that notion in his brief, and the court considers him to have abandoned it.  However, even considering the merits, the court cannot see how Rosenblatt's involvement creates a confidentiality problem <u>for Mock</u>.  Rosenblatt's evaluation of Hulse is over and done, as is Hulse's case, and Mock has not explained how he thinks his own confidential information might be disclosed as a result of the prior evaluation of Hulse.  If anything, Rosenblatt's dual role in this case creates the possibility that Rosenblatt will disclose Hulse's confidential information <u>to Mock</u>, though the court has no reason to think Rosenblatt will do so.  Furthermore, Rosenblatt's evaluation of Hulse is not filed under seal, and is thus available to the public, so it is not obvious what confidential information with regard to Hulse would

17

even be at issue.  In any event, Mock is in no position to invoke Hulse's privacy interests.

In sum, then, the only concrete scenario Mock has articulated suggests that Rosenblatt's prior involvement in Hulse's case creates a <u>potential</u> conflict of interest: namely, that if Rosenblatt is called at Mock's sentencing, his testimony may be compromised because of some loyalty to Hulse.  Mock has also suggested that this situation creates the <u>appearance</u> of a conflict, apart from the question of how likely an actual conflict might be.  However, the court can discern no specific argument indicating that Rosenblatt presently has an <u>actual</u> conflict.

This is consistent with the conclusions of Kinlaw, the ethics professor.  She indicates that multiple relationships can both create an actual conflict of interest and also "raise the specter" of the appearance of conflict of interest.  Declaration of Kathy Kinlaw, M.Div. (Doc. No. 478-1) at 5.  She specifically indicates

18

that, during his evaluation of Hulse, Rosenblatt had the opportunity to review the indictment, which contains information about Mock.  She finds that it is "unclear whether access to such information would constitute undue influence that would impact Dr. Rosenblatt's competency evaluation" of Mock.  <u>Id</u>.  However, even if Rosenblatt had not already seen the indictment, he would be given the opportunity to review the indictment in preparation for his evaluation of Mock, so the court cannot see how reviewing the indictment earlier makes any difference.

Ultimately, though, even with her observation about the indictment, it appears Kinlaw's conclusion with regard to this case is <u>not</u> that there is an actual conflict of interest.  Rather, she concludes that there is "potential for the appearance of conflict of interest" and "[e]thically it would be prudent to avoid any appearance of conflict of interest in this case" by identifying another expert to perform the evaluation. <u>Id</u>.

19

The court thus concludes that, <u>at most</u>, this case presents a tenuous potential conflict of interest and a tenuous potential for the appearance of conflict of interest.  The question is whether the court can or should do anything about it.

### B.

Rosenblatt is not a court-appointed expert; rather, he is the government's proposed evaluator and witness on the issue of Mock's competency.  Mock does not identify the legal basis for his motion and, as explained below, the court knows of no legal basis for prohibiting the government from retaining and using Rosenblatt as a witness, particularly absent any actual conflict of interest.

The court will begin with 18 U.S.C. § 4241, which establishes the statutory framework for Mock's competency determination.  The statute provides that "the court <u>may</u> order that a psychiatric or psychological examination of

the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247 (b) and (c)."  18 U.S.C. § 4241(b) (emphasis added).  Section 4247 provides that such an examination "shall be conducted by a licensed or certified psychiatrist or psychologist," and that each such licensed professional "shall be designated by the court."  18 U.S.C. § 4247(b).

However, the government's proposed evaluation would not be conducted under the auspices of § 4247 at all. Section 4241 allows, but does not require, a court-directed evaluation; if the court does not order an evaluation pursuant to § 4247, it can still proceed to determine the defendant's competency based on the evidence presented by the parties.  See <u>United States v. Anderson</u>, 329 F. App'x 878, 885 (11th Cir. 2009) ("The language of those provisions is precatory rather than mandatory -- the district court may, not must, provide for a court-ordered examination of the defendant").  In

this case, the parties have agreed that the <u>government</u> will be permitted to conduct its own evaluation, with an evaluator of its choosing, and to present the results to the court.  The <u>court</u> has ordered no evaluation and has designated no examiner to conduct it.  Rather, the court's prior opinion simply resolved the question of whether the government would be permitted to conduct its evaluation in a custodial setting.  As set forth in that opinion, the prospect of custody implicated Mock's liberty interests and raised serious due process concerns.  By contrast, the proposed evaluation by Rosenblatt, out of custody, is more in the nature of agreed-upon discovery between the parties.  <u>Cf</u>. Fed. R. Civ. P. 35 (providing for mental examination as form of discovery in civil cases).

This understanding helps bring Mock's instant motion into focus.  Mock argues that Rosenblatt has a conflict of interest and so should be disqualified.  But § 4241 does not speak to disqualification of experts presented

by the parties; indeed, even when it comes to a court-appointed expert, § 4247 requires only that he be a "licensed or certified psychiatrist or psychologist." Neither statute, by its terms, appears to offer any basis for instructing the government to retain a different psychiatrist.

Several comparisons serve to highlight Mock's failure to cite any legal authority to support his motion. An attorney with a conflict of interest can be disqualified from providing representation in a criminal case. See, e.g., Holloway v. Arkansas, 435 U.S. 475 (1978). But that disqualification arises out of the defendant's right under the Sixth Amendment to effective assistance of counsel. Id. Similarly, a judge must recuse himself if he has a conflict of interest. See Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868 (2009); Tumey v. State of Ohio, 273 U.S. 510 (1927). But that recusal is required because Due Process clauses of the Fifth and Fourteenth Amendments demand "a fair tribunal,"

Caperton, 556 U.S. at 876 (internal quotation marks omitted), or, in other words, a fair and impartial judge.

As far as this court is aware, there is no similar legal basis for demanding that witnesses presented by the government in a criminal case be free from conflicts of interest. On the contrary, witnesses in cases of all types frequently have various biases and conflicts of interest that may serve to undermine their testimony. But the proper remedy in those circumstances is not, as Mock requests, a determination by the court that the witness is biased before he even takes the stand. Rather, the appropriate course is to afford the party against whom such a witness is offered "a full opportunity to cross-examine the witness[] and make the [factfinder] aware of any potential bias or conflict of interest." United States v. Battle, 264 F. Supp. 2d 1088, 1206 (N.D. Ga. 2003) (Evans, J.), aff'd, 419 F.3d 1292 (11th Cir. 2005).

In <u>Battle</u>, a habeas-corpus challenge pursuant to 28 U.S.C. § 2255 to the defendant's murder conviction and sentence, the court considered a somewhat similar argument to the one made here. The defendant in that case argued that two psychiatrists, who were called as witnesses by the government after evaluating Battle for competency and in relation to his insanity defense, should have been excluded because they had a conflict of interest. Specifically, the defendant argued that the psychiatrists were employed by the BOP, as the alleged murder victim in that case had been, and so were biased. The district court denied habeas relief, noting that, "Witnesses who have some interest at stake in the proceedings routinely testify in court, whether it is a cooperating defendant or an expert being paid by a party." <u>Battle</u>, 264 F. Supp. 2d at 1206. The court noted that the defendant had ample opportunity to elicit any bias during cross-examination, and indeed did explore that question with the doctors on the stand. The court

25

concluded that, "Whether and to what extent the witness's employment by the BOP created a conflict of interest is a factor for jury consideration as to the weight and credibility of the testimony."   Id.

The alleged conflict of interest in this case is much more tenuous than was the argument in Battle, where the court found the experts' testimony permissible. Rosenblatt has represented that he was given no information about Mock and did not discuss Mock with Hulse, and Mock offers no reason to doubt that assertion. However, Mock argues that there will likely be 'finger-pointing' between Hulse and Mock at sentencing, and the prior financial and professional relationship with Hulse might have left Rosenblatt predisposed against Mock in a way that will taint his possible testimony at sentencing. That conclusion is speculative in the extreme under the circumstances of this case.  Battle had far more basis to fear that the doctors in that case were predisposed against him, given that the murder victim was a fellow

employee of BOP, but even that was insufficient to justify excluding those witnesses' testimony.  Despite the stronger basis in <u>Battle</u> to conclude there was a potential conflict, or at least the appearance of conflict, the court determined that cross-examination was adequate to protect against the chance of bias.  This court can discern no basis to preclude the government from using the expert of its choosing.[3]

---

3. The court does, of course, have a 'gate-keeping' function with regard to expert testimony.  <u>See</u> Fed. R. Evid. 702; <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993).  Rosenblatt's credentials and methods are not in dispute.  There is also authority that, "Federal courts have the inherent power to disqualify experts ... although cases that grant disqualification are rare." <u>Koch Ref. Co. v. Jennifer L. Boudreau M/V</u>, 85 F.3d 1178, 1181 (5th Cir. 1996).  As far as the court is aware, those cases all involve experts or parties switching sides, and therefore raise concerns that a party's confidential communications with his experts may be disclosed to adverse parties.  There is no such danger of Mock's confidential communications being exposed in this case.

## C.

Even if Rosenblatt were a court-appointed expert, that would not change the resolution of Mock's motion. The court assumes, for the sake of argument, that a court-appointed expert with a conflict of interests would raise due-process concerns, although the court notes that Mock has cited no authority to that effect and even a court-appointed expert merely renders an opinion which the court, as the adjudicator of competency, is free to accept or reject. However, the assumption that due process would be implicated if the court appointed Rosenblatt does not answer the key question: under what circumstances would due process require disqualification?

Given that there is no actual conflict of interest in this case, and given the tenuousness of the potential conflict of interest articulated by Mock, it appears Mock argues for a blanket rule: in criminal cases, courts should always disqualify psychiatric experts who have been previously involved in other aspects of the

proceedings, including those who have evaluated co-defendants. But, in cases involving similar issues, courts have rejected this kind of blanket rule.

For example, in United States v. Best, 61 M.J. 376 (C.A.A.F. 2005), a competency evaluation was conducted during the course of court-martial proceedings. Best objected that a psychiatrist and a psychologist, who were members of the sanity board charged with determining his competence, had a conflict of interest because they both previously conducted brief assessments of Best's mental condition in a treatment capacity. In other words, Best raised the archetypical 'dual agency' problem of a single practitioner serving in both clinical and forensic capacities.

The court found that, "even if there exists some evidence of conflict, that evidence is insufficient to comprise an actual conflict of interest." Best, 61 M.J. at 388 (internal quotation marks omitted). The court reviewed various sources of authority, including many of

the same professional guidelines for psychiatrists and psychologists on which Mock relies in this case.   The court acknowledged that those sources indicated that psychiatrists and psychologists <u>should</u> avoid multiple relationships.  However, in light of the limited role the providers at issue had played in treating Best, the court concluded that, "There was no material limitation of either [one's] ability to participate objectively in the board."   <u>Id</u>.   In other words, neither a potential conflict of interest, nor even discouragement of the experts' conduct by their own professional association, was enough to justify excluding the providers from the sanity board in the absence of any actual conflict of interest.

In an opinion concurring in the result in <u>Best</u>, Judge Baker made clear that, in his view, the question was one of constitutional magnitude: because the sanity board was essentially the adjudicator of Best's competence, he was entitled to demand that the board was fair and impartial.

<u>Id</u>. at 389-90 (Baker, J., concurring in the result). However, he agreed that the evaluators were <u>actually</u> impartial, despite Best's argument suggesting that they might have a potential conflict or the appearance of a conflict.  Considering Best's apparent argument for "per se disqualification where an assessing psychotherapist subsequently serves on" a sanity board, Judge Baker found that view was "not required as a matter of ... constitutional due process, where as here, Appellant has had the opportunity to test for impartiality" through cross-examination.  <u>Id</u>. at 390.

Judge Baker noted that, "The Government might choose as a prudential matter to eliminate any possible appearance of a conflict of interest, and related litigation, by affirmatively selecting qualified ... board members with no prior connection to the subject of the review," and that this prudential approach would be "consistent with the admonition in both the psychologists' Code of Conduct and the psychiatrists'

Principles of Medial Ethics, which disfavor, and in some cases bar, a treating psychotherapist's performance of multiple roles." <u>Id</u>.  But, he concluded, such across-the-board disqualification was not legally required.

Similarly, the doctors in <u>Battle</u> were themselves court-appointed experts.  264 F.Supp.2d at 1107. Nevertheless, despite the defendant's argument that the doctors <u>might</u> be biased because they had the same employer as the murder victim in that case, the court found that "this fact in itself is not so suspect that their evaluations and testimony should be rendered per se unreliable." <u>Id</u>. at 1206.  In other words, the court refused to adopt a blanket rule that court-appointed experts are disqualified because of potential or apparent conflicts of interest, relying instead on cross-examination to place any indications of bias before the fact-finder.

Finally, the related context of experts appointed to assist defendants offers some additional guidance.  In

Simon v. Epps, 2007 WL 4292498 (N.D. Miss. 2007) (Pepper,
J.), aff'd, 394 F. App'x 138 (5th Cir. 2010), a
habeas-corpus case under 28 U.S.C. § 2254, the defendant
argued that the psychologist appointed by the court to
evaluate the defendant for mitigation purposes had a
conflict of interest.  Specifically, he noted that the
psychologist had previously evaluated a co-defendant, and
argued that, as a result, the psychologist had divided
loyalties that caused him to provide compromised
mitigation testimony.  The state appellate court
concluded that the defendant had no right to the
effective assistance of his expert witness, and the
federal district court declined to grant habeas relief on
this basis, finding "no clearly established federal right
to the effective assistance of an expert witness."
Simon, 2007 WL 4292498 at *20; see also 28 U.S.C.
§ 2254(d)(1) (establishing "clearly established Federal
law" standard).  Similarly, in a brief, summary opinion,
the Ninth Circuit refused habeas relief based on an

alleged conflict of interest of the defendant's retained
expert, finding that "there is no clearly established
Supreme Court law establishing a due process right to a
medical expert free from conflicts of interest." Henslee
v. Stewart, 172 F. App'x 759 (9th Cir. 2006).   While
obviously   distinguishable   from   this   case,   these
authorities further confirm that courts do not enforce a
blanket prohibition on evaluations by psychiatrists who
have some potential conflict or previous involvement in
the case.

### D.

Ultimately, this court's conclusion is similar to
Judge Baker's views in Best.   It might very well be
prudent for the government to use another expert "to
eliminate any possible appearance of a conflict of
interest." Best, 61 M.J. at 390 (Baker, J., concurring
in the judgment).   Indeed, as is always true, the
government's interest would probably be best served by

retaining an expert who is not vulnerable to cross-examination based on potential bias.  In particular, this opinion should not be read as an assessment of Rosenblatt's credibility; that is an issue the court will determine if and when he testifies.

Furthermore, it might be prudent for Dr. Rosenblatt to decline to evaluate Mock.  <u>See</u> Declaration of Kathy Kinlaw, M.Div. (Doc. No. 478-1) at 5 ("it would be prudent to avoid any appearance of conflict of interest").  The court does not decide what course of action the ethical rules governing Rosenblatt, or those that inform his practice by analogy, require or recommend in this case.  Mock has argued that those guidelines either command or urge Rosenblatt to avoid multiple relationships because of the risk of bias, and the court does not necessarily agree or disagree with that reading. Apparently, Rosenblatt has determined that his conduct in this case is permissible under the governing rules, and

35

the court does not render an opinion on that question one way or another.

All the court has concluded is that there is no legal basis for the court to disqualify Rosenblatt from evaluating Mock. This is for three reasons: first, Rosenblatt has no actual conflict of interest and only the most tenuous potential or apparent conflicts; second, the court is aware of no legal basis to disqualify Rosenblatt, as an expert retained by the government and potential witness for the government, rather than permitting him to testify and then making a credibility determination; and, third, even if Rosenblatt were court-appointed and his involvement implicated due-process protections, due process would not require his disqualification under the circumstances of this case.

***

Accordingly, for the above reasons, it is ORDERED as follows:

(1)   Defendant   Steven   P.   Mock's   motion   for determination of conflict of interest (doc. no. 468) is denied to the extent that defendant Mock seeks to have the court disqualify the government's proposed expert witness,  Dr.  Steven  Rosenblatt,  from  conducting  a competency evaluation in this case.

(2) The government may proceed with the evaluation of defendant Mock by Dr. Rosenblatt in conformity with the court's prior opinion (doc. no. 466).

(3) Pursuant to the court's previous order (doc. no. 476), the government has 14 days from the date of this order to conduct and file that evaluation.

DONE, this the 26th day of June, 2014.


　　　　　　　　　　 /s/ Myron H. Thompson　
　　　　　　　　　UNITED STATES DISTRICT JUDGE